IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TINA WILLIS, | : | CONSOLIDATED UNDER |
| | : | MDL 875 |
| | : | |
| Plaintiff, | : | |
| | : | Transferred from the District |
| | : | of South Carolina |
| v. | : | (Case No. 09-02163) |
| | : | |
| | : | |
| BW IP INTERNATIONAL INC., | : | |
| ET AL., | : | |
| | : | E.D. PA CIVIL ACTION NO. |
| | : | 2:09-91449 |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              AUGUST 26, 2011

TABLE OF CONTENTS

I.   INTRODUCTION............................................................2
II.  BACKGROUND.............................................................4
     A.   Plaintiff's Suit...............................................4
     B.   Defendants' Evidence in Support of Entitlement to
          Summary Judgment Pursuant to the Government Contractor
          Defense........................................................5
          1.   Foster Wheeler LLC........................................5
               i.    Affidavit of Admiral Ben J. Lehman.................5
               ii.   Affidavit of J. Thomas Schroppe....................6
               iii.  Affidavit of Captain Lawrence Stilwell
                     Betts..............................................7
               iv.   Military Specifications............................7
               v.    Navy's Knowledge of the Dangers of
                     Asbestos...........................................8
          2.   CBS Corp. f/k/a Westinghouse.............................8
               i.    Affidavit of James Gate............................8
               ii.   Affidavit of Admiral Roger B. Horne, Jr.....9
          3.   Crane Co.................................................10
               i.    Affidavit of Admiral David Sargent........10
               ii.   Affidavit of Anthony D. Pantaleoni........10
               iii.  MIL-V-22023D.......................................11
     C.   Plaintiff's Evidence Submitted in Opposition to
          Defendants' Motions for Summary Judgment Pursuant to
          the Government Contractor Defense.............................11

        1.   Deposition of Adam Martin......................11
        2.   Affidavit of Captain Arnold Moore..............12
        3.   Affidavit of Captain William Lowell............12
        4.   Evidence of Warnings Which Other Manufacturers
             Placed on Their Products.......................13
        5.   Navy's Knowledge of the Dangers of Asbestos.....13
III. LEGAL STANDARD..........................................14
     A.   Federal Rule of Civil Procedure 56(a)..............14
     B    Choice of Law......................................16
     C.   Government Contractor Defense......................16
IV.  DISCUSSION.............................................18
     A.   Plaintiff's Objections to the Affidavits Offered by
          Defendants.........................................18
     B.   Elements of the Government Contractor Defense........20
          1.   First Element of the Boyle Test................20
               i.   Foster Wheeler LLC.......................21
               ii.  CBS Corp. f/k/a Westinghouse.............21
               iii. Crane Co................................22
               iv.  Plaintiff's Evidence Controverting
                    Defendants' Affidavits..................22
               v.   Analysis................................23
          2.   Second Element of the Boyle Test..............25
          3.   Third Element of the Boyle Test...............25
     C.   Defendants' Burden of Showing the Absence of a Genuine
          Issue of Material Fact as to Whether They Are Entitled
          to the Government Contractor Defense..................27
V.   CONCLUSION.............................................27

## I.   INTRODUCTION

          This case is part of MDL-875, the consolidated asbestos

products liability multi-district litigation pending in the

United States District Court for the Eastern District of

Pennsylvania.  Before the Court are the Motions for Summary

Judgment of Defendants Foster Wheeler LLC, CBS Corp. f/k/a

Westinghouse, and Crane Co. ("Defendants").  Defendants have

asserted that they are entitled to summary judgment pursuant to

the government contractor defense.[1]  Commonly, Defendants in MDL-875 assert the government contractor defense as a basis for removal. See Hagen v. Benjamin Foster Co., 739 F. Supp. 2d 770, 772 (E.D. Pa. 2010) (Robreno, J.). This Court has already rejected those cases requiring a seemingly "heightened" standard for removal pursuant to the government contractor defense, and has held that a defense is colorable for the purpose of determining jurisdiction under the federal office removal statute if the defendant invoking it identifies facts which, viewed in the light most favorable to the defendant, would establish a complete defense at trial. Id. at 785.

In addition to asserting the government contractor defense as a basis for removal, once the case is removed and discovery is complete, hundreds of defendants in MDL-875 have asserted that they are entitled to summary judgment pursuant to the government contractor defense.  The standard for establishing the government contractor defense as a basis for removal, where defendant must point to facts which, viewed in the light most favorable to defendant, would establish a complete defense at trial, is on the opposite spectrum from the standard for proving the government contractor defense as an affirmative defense at

_____

[1]      In the case law, the government contractor defense is also sometimes referred to as the federal contractor or federal officer defense.

the summary judgment stage, where a defendant must show the absence of a genuine issue of material fact and that it is entitled to the government contractor defense as a matter of law. This memorandum examines whether Defendants are entitled to summary judgment pursuant to the government contractor defense.[2] For the reasons set forth below, Defendants' Motions for Summary Judgment will be denied as to the government contractor defense.

## II. BACKGROUND

### A.  Plaintiff's Suit

Plaintiff, Tina M. Willis, individually and as executrix of the estate of Hiram Peavy ("Mr. Peavy"), filed suit against various Defendants in South Carolina state court on July 1, 2009.  Defendant Carrier Corp. removed this case to the United States District Court for the District of South Carolina on August 13, 2009.  This case was then transferred to the United States District Court for the Eastern District of Pennsylvania as part of MDL-875.  Mr. Peavy worked at the Charleston Naval Shipyard from approximately 1973 until 1993.  He was a machinist in Shop 38, where he performed overhauls, made repairs to equipment, and reinstalled equipment on ships.  Mr. Peavy was

---

[2]    The issues of product identification, the bare metal defense, the sophisticated user defense, and whether Plaintiff was owed a post-sale duty to warn have been addressed in separate footnote orders.

diagnosed with mesothelioma and passed away in 2008. (Pl.'s Resp. at 9.)

B.   Defendants' Evidence in Support of Entitlement to Summary Judgment Pursuant to the Government Contractor Defense

Defendants have asserted that they are entitled to summary judgment pursuant to the government contractor defense. In support of this defense, Defendants submit the following evidence:

1.   Foster Wheeler LLC

i.   Affidavit of Admiral Ben J. Lehman[3]

Retired Admiral Lehman, who served in or had close contact with the Navy from 1942 until 1982, avers that boilers, including Foster Wheeler boilers, were designed and built for use on United States Navy vessels ("Navy vessels") with detailed specifications written and approved by the United States Navy ("Navy").[4] (Lehman aff. ¶ 4.) Admiral Lehman avers that it was

---

[3]   Plaintiff points out that Admiral Lehman's affidavit was signed three (3) years prior to the filing of this lawsuit. While Admiral Lehman's affidavit is not specific to this case, this Court finds that it is admissible as it provides information pertaining to the government contractor defense that need not be case specific.

[4]   To attack the credibility of Admiral Lehman, Plaintiff cites to a prior deposition of Admiral Lehman, where he testified that he was unaware of any occasions of the Navy specifically

common for the Navy to inspect the manufacturing and quality
assurance processes at a supplier's plant and that "[t]he
inspectors of Naval Machinery [or those with other titles who
succeeded them] were responsible for assuring that contractors
such as Foster Wheeler complied with the contract specifications
every detail." (Id. ¶ 4.) The Navy had final say over the design
of any piece of equipment. (Id. ¶ 5.)


                ii.  Affidavit of J. Thomas Schroppe

        J. Thomas Schroppe served as Executive Vice President
of Foster Wheeler Power Systems until his retirement in 1999.
(Schroppe aff. ¶ 1.) Mr. Schroppe avers that the Navy approved
precise specifications for boilers on Navy ships and that Foster
Wheeler was not permitted to depart from these specifications.
(Id. ¶¶ 5 & 8.) Mr. Schroppe avers that, "[d]uring manufacture of
the boiler, a Navy resident inspector was present at Foster
Wheeler's shops." (Id. ¶ 16.)

---

prohibiting manufacturers from placing warnings on their products
or in their manuals. (Pl.'s Ex. 3, Lehman Dep., March 21, 2005 at
32-33.) In a later deposition, Admiral Lehman testified that he
believed that, by 1969, the Navy would have accepted products
with warning labels on them. (Pl.'s Ex. 4, Lehman Dep., Nov. 9,
2010 at 80-81.)

iii. Affidavit of Captain Lawrence Stilwell Betts

According to Captain Betts, who served as Naval captain until 2001, the Navy specified the types of thermal insulation to be used on boilers pursuant to MIL-B-18381.[5] (Betts aff. ¶ 6.) As early as the 1920s, the Navy was aware of the dangers of asbestos. (Id. ¶ 8.)

iv. Military Specifications

Defendant Foster Wheeler points out that the Navy had detailed specifications for identification plates, which were affixed to Foster Wheeler products.  According to military specifications, manufacturers were instructed to provide information for the safe handling and operation of their products on the identification plates. (Def.'s Mot. Summ. J. at 7-9.) However, there was no space for a warning about asbestos on the major units. (Id.) Defendant Foster Wheeler argues that, pursuant to Navy Technical Manuals and paragraph 3.3.3.2 of Military Specification 15071, warnings could only be used if operation of

---

[5]     Plaintiff points to the deposition of Kenneth Nelson, a Navy industrial hygienist, to cast doubt on Captain Betts' affidavit.  Mr. Nelson testified that there was "no reason why it was either not feasible or not possible for asbestos manufacturers to put a warning on their cartons of asbestos products that the product could be dangerous."  When confronted with Mr. Nelson's testimony, Captain Betts agreed that manufacturers could have placed warnings on their products, but did not do so. (Pl.'s Ex. 41, Betts Dep., Oct. 7, 2005 at 67-68.)

the product without such a warning was certain to result in injury or death. (Id. at 10-11.)

v.   Navy's Knowledge of the Dangers of Asbestos

Defendant Foster Wheeler cites to evidence that as early as 1922, the Navy was aware of the dangers of asbestos. (Def.'s Mot. Summ. J. at 11-12.) In 1922, in its Instructions to Medical Officers, the Navy listed asbestos as a dust which could cause pulmonary disease. (Id.) In 1943, the Navy approved Minimum Requirements for Safety and Health and concluded that while asbestosis was a common disease, it could be prevented through segregation, the use of respirators, ventilation, and periodic medical examinations. (Id.)

2.   CBS Corp. f/k/a Westinghouse

i.   Affidavit of James Gate

Mr. Gate, a former Westinghouse employee, testified that the Navy specified all aspects of the design and materials for main propulsion turbines. (Gate aff. ¶ 7.) Military specifications required the use of asbestos thermal insulation. (Id. ¶ 8.) Mr. Gate avers that,

> Westinghouse would not have been permitted, under the
> specifications, associated regulations and procedures,
> nor under the actual practice as it evolved in the
> field, to affix any type of warning or caution
> statement to equipment intended for installation onto a

Navy vessel, beyond those required by the Navy, without prior discussion with, and approval by, the Navy.

(Id. ¶ 31.) The Navy instructed that technical manuals accompany Westinghouse products. (Id. ¶¶ 30-32.) Safety information was only permitted to be placed in these manuals to the extent permitted by the Navy. (Id.)[6]

ii.  Affidavit of Admiral Roger B. Horne, Jr.

Retired Admiral Horne, who served in the Navy from 1956 until 1991, testified that Navy personnel monitored Westinghouse to ensure compliance with military specifications. (Horne aff. ¶ 33.) He also averred that the Navy exercised control over warnings. (Id.)[7]

---

[6]   Plaintiff points to a prior deposition to cast doubt on Mr. Gate's averments.  In this deposition, Mr. Gates admitted that Military Specification 15071 required manufacturers to place warnings in technical manuals about any procedures which could lead to serious injury or death. (Pl.'s Ex. 7, Gates Dep., June 18, 2002 at 202-04.)

[7]   To cast doubt on the information in Admiral Horne's affidavit, Plaintiff cites to a deposition taken in 2006, where Admiral Horne admitted that he was not personally aware of any instance where the Navy did not approve a warning to be placed on a manufacturer's product. (Pl.'s Ex. 9, Horne Dep., June 12, 2006 at 52.)

3.   <u>Crane Co.</u>

i.   Affidavit of Admiral David Sargent[8]

Retired Admiral Sargent, who served in the Navy from 1967 until 1999, asserted that the Navy provided specifications for Crane Co. products and that had manufacturers attempted to depart from these specifications and affix warnings to their products, they would not have been permitted to do so. (Sargent aff. at 12-14.)[9]

ii.   Affidavit of Anthony D. Pantaleoni

Mr. Pantaleoni, a Crane Co. employee, avers that military specifications "governed all aspects of a piece of equipment, such as a valve's, [sic] design and construction and specified the materials to be used, including materials such as gaskets and packing used in equipment." (Pantaleoni aff. ¶ 5.)

---

[8]   The Court recognizes that Admiral Sargent's affidavit was executed in <u>Stone v. Alfa Laval, Inc.</u>, 09-93726, and not specifically for this case.  As Admiral Sargent's affidavit pertains to issues common to both cases, this Court finds that it is proper to consider the affidavit in this case.

[9]   Plaintiff cites to Admiral Sargent's testimony in another case, where he indicated that while the Navy did not prohibit Buffalo Pumps, another manufacturer, from placing warnings about the hazards of asbestos on its products, the Navy "required the categories of information that would be included." (Pl.'s Ex. 1, Sargent Dep., Feb. 8, 2005 at 181.) Admiral Sargent testified that he had never seen an instance of the Navy actually rejecting a warning submitted by a manufacturer. (Pl.'s Ex. 42, Sargent Dep., April 29, 2009 at 170-71.)

10

Crane Co.'s equipment was built in accordance with these military specifications. (Id. ¶ 6.)

### iii. MIL-V-22023D

MIL-V-22023D set forth the exact information that valve manufacturers were required to include on label plates. (Def.'s Mot. Summ. J. at 7.)

C.   Plaintiff's Evidence Submitted in Opposition to Defendants' Motions for Summary Judgment Pursuant to the Government Contractor Defense

In opposition to Defendants' Motions for Summary Judgment pursuant to the government contractor defense, Plaintiff has submitted the following affidavits and deposition testimony:

### 1.   Deposition of Adam Martin

Plaintiff submits the deposition of Mr. Martin, which was taken in 1983 for other asbestos cases. (Pl.'s Resp. at 38.) From 1952 until 1983, Mr. Martin was a packaging inspector and specialist at a military supplies depot. (Pl.'s Ex. 11, Martin Dep., Jan. 28, 1983 at 8-14.) Mr. Martin described himself as an "Action Officer for Military Standard 129." (Id. at 14.) Mr. Martin testified that nothing in Military Standard 129 would have prohibited manufacturers from placing warnings on their products. (Id. at 29.)

2.   <u>Affidavit of Captain Arnold Moore</u>

Plaintiff submits the affidavit of Naval Expert and retired Captain Moore.  Throughout his career, Captain Moore reviewed technical manuals and plans for equipment used on Navy vessels. (Moore aff. ¶ 11.) Captain Moore averred that the Navy relied on manufacturers to identify hazards associated with their products, including asbestos-related hazards. (<u>Id.</u> ¶ 12.) Captain Moore cites to MIL-M-15071C, which stated that warnings were required for, "operating, procedures, practice, etc. which will result in personal injury or loss of life if not correctly followed." (<u>Id.</u> ¶ 18.) In 1961, this specification was revised as MIL-M-15071D and expressed the Government's intent "to accept commercial practices which are usually governed by state law." (<u>Id.</u> ¶ 19.) Captain Moore cites to the Navy Shipping Marking Handbook, which was issued in 1942. (<u>Id.</u> ¶ 22.) The Navy Shipment Marking Handbook required that "[a]ny necessary instructions for assembling of material or warnings as to handling, storage, and operation shall be packed with such material." (<u>Id.</u>)


3.   <u>Affidavit of Captain William Lowell</u>

Plaintiff submits the affidavit of Captain Lowell, who concluded that manufacturers were required, by Navy specifications, to warn about the dangers associated with asbestos. (Pl.'s Ex. 64, Lowell aff.)

12

4.   Evidence of Warnings Which Other Manufacturers
     Placed on Their Products

Plaintiff submits evidence that many manufacturers did
place warnings about the hazards of asbestos on their products as
early as 1964.  Around 1964, Johns-Manville began placing
warnings about the hazards of asbestos on its products.  Eagle
Picher began placing such warnings on their products in 1964, GAF
in approximately 1965, Fibreboard in approximately 1966,
Pittsburgh Corning in 1968, and Unarco in 1970.  Martin Craft,
Buffalo Pumps' corporate representative, testified that in 1987,
Buffalo Pumps did place warning labels on a specific type of pump
that went to the Navy. (Pl.'s Ex. 50, Kraft Dep., March 15, 2006
at 150-51.)

Plaintiff cites to warnings provided by Warren Pumps,
Westinghouse, and Foster Wheeler about other hazardous solvents
in their products which went to the Navy.  Plaintiff presents
evidence that Crane Co. actually attached an asbestos warning tag
to valves which it supplied to the Navy in the early 1980s.


5.   Navy's Knowledge of the Dangers of Asbestos

Plaintiff cites to Defendants' Expert Reports as
establishing that prior to the 1970s, the Navy was unaware of the
hazards posed by asbestos.  Captain Betts admitted that, during
the time when the most significant asbestos exposures occurred,

the Navy was unaware of the special hazard posed by asbestos.
(Pl.'s Ex. 58, Betts aff. ¶ 7.) Admiral Horne testified that
prior to approximately 1968, the Navy did not recognize the
significance of the problem posed by asbestos exposure or that it
could lead to the development of cancer. (Pl.'s Ex. 59, Horne
Dep., Jan. 9, 2004 at 40-41.) Admiral Sargent testified that he
personally was unaware of the dangers of asbestos exposure until
the mid to late 1970s. (Pl.'s Ex. 60, Sargent Dep., May 25, 2004
at 96-97.) Admiral Lehman testified that he did not personally
become aware of the hazards of asbestos until the late 1970s.
(Pl.'s Ex. 62, Lehman Dep., Oct. 26, 1999 at 66.) Dr. Foreman
testified the Navy relied on the erroneous Fleischer-Drinker
Report, issued in 1946, which indicated that asbestos thermal
insulation posed no threat to shipyard workers. (Pl.'s Ex. 61,
Foreman Dep., Jan. 7, 2008 at 41-42.)


III.   **LEGAL STANDARD**

   A.   Federal Rule of Civil Procedure 56(a)

        Summary judgment is appropriate if there are no genuine
issues of material fact and the moving party is entitled to
judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for
summary judgment will not be defeated by 'the mere existence' of
some disputed facts, but will be denied when there is a genuine
issue of material fact." Am. Eagle Outfitters v. Lyle & Scott

14

Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

The government contractor defense is an affirmative defense and thus, Defendants have the burden of showing the absence of a genuine issue of material fact as to whether they are entitled to the government contractor defense.

B.   Choice of Law

     Federal jurisdiction in this case is based on
diversity of citizenship under 28 U.S.C. § 1332.  This Court
has determined that maritime law does not apply in this
case. See Conner v. Alfa Laval, Inc., No. 09-67099, 2011 WL
3101810 (July 22, 2011 E.D. Pa) (Robreno, J.). The
government contractor defense is an issue of federal law and
therefore, the MDL transferee court applies the law of the
circuit where it sits, which in this case is the law of the
United States Court of Appeals for the Third Circuit.
Various Plaintiffs v. Various Defendants ("Oil Field
Cases"), 673 F. Supp. 2d 358, 362-63 (E.D. Pa. 2009)
(Robreno, J.) (citing In re New England Mut. Life Ins. Co.
Sales Practices Litig., 324 F. Supp. 2d 288, 297 (D. Mass.
2004); In re Nat'l Century Fin. Enters., Inc., Inv. Litig.,
323 F. Supp. 2d 861, 876 (S.D. Ohio 2004); In re Methyl
Tertiary Butyl Ether Prods. Liab. Litig., No. 1:00-1898,
2005 WL 106936 at *5 (S.D.N.Y. Jan. 18, 2005)).


C.   The Government Contractor Defense

     To satisfy the government contractor defense, a
defendant must show that: (1) the United States approved
reasonably precise specifications for the product at issue; (2)
the equipment conformed to those specifications and; (3) it

16

warned the United States about the dangers in the use of the
equipment that were known to it but not to the United States.
Boyle v. United Technologies Corp., 487 U.S. 500, 512 (1988). The
third prong may also be established by showing that the
government "knew as much or more than the defendant contractor
about the hazards" of the product. See Beaver Valley Power Co. v.
Nat'l Eng'g & Contracting Co., 883 F.2d 1210, 1216 (3d Cir.
1989).

As to the first and second prongs, in a failure to warn
context, it is not enough for defendant to show that a certain
product design conflicts with state law requiring warnings. In re
Joint E. & S.D.N.Y. Asbestos Litig., 897 F.2d 626, 630 (2d Cir.
1990). Rather, the defendant must show that the government
"issued reasonably precise specifications covering warnings-
specifications that reflect a considered judgment about the
warnings at issue." Hagen, 539 F. Supp. 2d at 783 (citing Holdren
v. Buffalo Pumps, Inc., 614 F. Supp. 2d 129, 143 (D. Mass.
2009)). Government approval of warnings must "transcend rubber
stamping" to allow a defendant to be shielded from state law
liability. 539 F. Supp. 2d at 783.

**IV.   DISCUSSION**

The dispute in this case centers on whether the deposition testimony and affidavits presented by Plaintiff are sufficient to raise a genuine issue of material fact as to whether or not Defendants are entitled to the cloak of the government contractor defense.

A.   <u>Plaintiff's Objections to the Affidavits Offered by Defendants</u>

The Court will first address Plaintiff's objections to the affidavits offered by Defendants, specifically the affidavits of Admiral Lehman, Mr. Gate, and Admiral Sargent.  Plaintiff contends that the averments in these affidavits are based on speculation and violate the Best Evidence Rule.

Defendants' experts aver that had Defendants attempted to affix warnings to their products, the Navy would not have permitted them to do so. (Pl.'s Resp. at 10.) Plaintiff argues that this expert testimony should be stricken as speculative. Pursuant to Federal Rule of Evidence 702, expert testimony must "assist the trier of fact [in] understand[ing] or determin[ing] a fact issue."  An expert, "may testify thereto in the form of an opinion or otherwise, if: (1) the testimony is based on sufficient facts or data; (2) the testimony is the product of

reliable principles and methods, and (3) the witness has applied
the principles and methods reliably to the facts of the case."

Here, contrary to Plaintiff's argument, Defendants'
experts were not speculating, but were providing their expert
opinions, based on their experience in the Navy's dealings with
manufacturers.  Based on this experience, they conclude that the
Navy would not have permitted manufacturers to depart from
military specifications.  Also, it is based on their experience
that they opine as to why such a request to depart from military
specifications would not have been made and why, if made, such a
request would not have been approved.  These averments are based
on personal knowledge and information contained in military
specifications.  Such testimony would assist the trier of fact in
assessing whether the first and second prongs of the Boyle test
have been met.  See In re Paoli R.R. Yard PCB Litig., 35 F.3d 717,
744 (3d Cir. 1994) (finding that expert testimony must be
reliable and helpful in assisting the trier of fact).

Plaintiff argues that Defendants' experts' averments
violate the Best Evidence Rule because the military
specifications which the experts relied on are the best evidence
of the Navy's policy regarding warnings.  The Best Evidence Rule
provides that, "[t]o prove the content of a writing, recording,
or photograph, the original writing, recording, or photograph is

19

required. . . ." Fed. R. Evid. 1002. However, a witness is not prohibited from testifying as to his or her personal knowledge merely because the testimony can be supported by written documentation. See D'Angelo v. United States, 456 F. Supp. 127, 131 (D. Del. 1978), aff'd 605 F.2d 1194 (3d Cir. 1979); see also R & R Associates, Inc. v. Visual Scene, Inc., 726 F.2d 36, 38 (1st Cir. 1984). Although Defendants' experts cited to various military specifications and did not always submit these specifications into evidence, they were not trying to prove the content of these writings.  Rather, they were providing their expert opinion, based on their experience, of what the Navy required manufacturers to do.  Accordingly, this Court find that the affidavits submitted by Defendants' experts do not violate the Best Evidence Rule.


B.   Elements of the Government Contractor Defense

1.   First Element of the Boyle Test

The first element of the Boyle test requires the Court to consider whether the Navy approved reasonably precise specifications for Defendants' products, which reflected a considered judgment about warnings. See Hagen, 539 F. Supp. 2d at 783.

i.   Foster Wheeler LLC

Both Admiral Lehman and Mr. Schroppe averred that the
Navy provided detailed specifications for Foster Wheeler boilers.
To cast doubt on these assertions, Plaintiff cites to a
deposition where Admiral Lehman testified that he was unaware of
a specific occasion where the Navy prohibited a manufacturer from
placing warnings on its products.  Defendant Foster Wheeler
presents the affidavit of Captain Betts, who testified that the
Navy specified that insulation be put on Foster Wheeler boilers.
To controvert Captain Betts' averments, Plaintiff points to a
deposition where Captain Betts admitted that manufacturers could
have provided warnings about the dangers of asbestos.  Defendant
Foster Wheeler submits military specifications for its products
and asserts that there was no area to place warnings on these
products.  Warnings could only be provided if operation of the
product was certain to result in injury or death.


ii.   CBS Corp. f/k/a Westinghouse

According to Mr. Gate's affidavit, Westinghouse would
not have been permitted to place warnings on its products without
prior approval by the Navy.  To cast doubt on Mr. Gate's
testimony, Plaintiff cites to his deposition testimony that
military specifications required manufacturers to warn about

dangers which could cause serious injury or death.  Plaintiff cites to a deposition where Mr. Gate admitted that military specifications would not have been written to specifically prohibit an asbestos-related warning.


### iii. Crane Co.

Admiral Sargent averred that the Navy provided specifications for Crane Co. products.  Plaintiff cites to Admiral Sargent's deposition testimony that the Navy would not specifically have forbidden manufacturers from placing warnings on their products.  Mr. Pantaleoni averred that the Navy provided specifications for all aspects of Crane Co. products.  Defendant cites to MIL-V-22023D, which set forth the exact information which valve manufacturers were to include on label plates.  These specifications did not provide for the inclusion of warnings.


### iv.  Plaintiff's Evidence Controverting Defendants' Affidavits

As discussed above, not only has Plaintiff submitted several affidavits and depositions to controvert the evidence presented by Defendants, but Plaintiff has also pointed to deposition testimony which casts doubt on the credibility of Defendants' experts.  These credibility determinations should be

left to the trier of fact.

Mr. Martin, Plaintiff's Expert, testified that nothing in Military Standard 129 would have prohibited manufacturers from placing warnings on their products. Captain Moore averred that the Navy actually relied on manufacturers to place warnings on their products. The Navy expected manufacturers to follow commercial practices and comply with state law. Captain Lowell similarly averred that manufacturers were required to warn about the dangers associated with asbestos. In support of these assertions, Plaintiff cites to evidence that several manufacturers placed asbestos warnings on their products as early as 1964 and that some manufacturers placed hazardous substance warnings on products which were sold to the Navy.

v.   Analysis

Defendants have submitted evidence, in the form of the affidavits of Admiral Lehman, Mr. Schroppe, Captain Betts, Admiral Sargent, and Mr. Pantaleoni, that the Navy issued military specifications for their products. Defendants assert that the Navy specified that warnings could not be placed on Defendants products since there were specifications for all aspects of Defendants' products and these specifications did not indicate that warnings should be affixed to Defendants' products.

Also, according to the evidence submitted by Foster Wheeler and Crane Co., label plates which were to be placed on Defendants' products did not provide for an area to place warnings.  Navy representatives oversaw the manufacturing process and did not specify that warnings be placed on Defendants' products.

Plaintiff has controverted Defendants' evidence by citing to deposition testimony to cast doubt on the averments of Defendants' experts and by submitting the testimony of their own experts.  On cross examination, Admiral Lehman, Mr. Gate, and Admiral Sargent testified that they did not know of any specific instance where the Navy prohibited manufacturers from placing warnings on products.  Moreover, both Captain Betts and Mr. Gate cited to military specifications, which required that warnings be utilized on products which could cause serious injury or death. Plaintiff's experts testified that the Navy actually relied on manufacturers to place warnings on products which went to the Navy.  Based on the foregoing, there are genuine issues of material fact as to whether the Navy did or did not reflect considered judgment over whether warnings could be included on Defendants' products.

2.   <u>Second Element of the Boyle Test</u>

As this Court has found that there is a genuine issue of material fact as to whether the Navy issued reasonably precise specifications for Defendants' products, there is no need to consider the second prong of the <u>Boyle</u> test, that is whether Defendants' products conformed to the reasonably precise specifications issued by the Navy.  Despite the fact that all elements of the <u>Boyle</u> test must be met for Defendants to prevail on their motions for summary judgment based on the government contractor defense and here Defendants have not met the first element of the <u>Boyle</u> test, for the sake of providing guidance on this often repeated issue, this Court will consider the third element of the <u>Boyle</u> test.

3.   <u>Third Element of the Boyle Test</u>

Since Defendants do not contend that they warned the Navy about the dangers of asbestos, this Court must determine whether Defendants have shown the absence of a genuine issue of material fact as to whether the Navy had greater knowledge than Defendants about the dangers of asbestos.

Foster Wheeler's Expert, Captain Betts, averred that, as early as the 1920s, the Navy was aware of the dangers of asbestos.  In addition, Foster Wheeler cites to the Navy's

25

Instructions to Medical Officers, issued in 1922, which listed asbestos dust as a cause of pulmonary disease.  The Navy's Minimum Requirements for Safety and Health, which was issued in 1943, provided for measures to prevent asbestos exposures.

Plaintiff cites to Expert Reports of Captain Betts, Admiral Horne, and Admiral Sargent to establish that the Navy was unaware of the dangers of asbestos until the late 1960s or early 1970s.  Dr. Foreman testified that the Navy relied on the erroneous Fleischer-Drinker Report, which indicated that asbestos insulation posed no threat to shipyard workers.

Defendants have presented evidence that the Navy was aware of the dangers of asbestos as early as the 1920s. Defendants argue that since the Navy had superior knowledge about the dangers of asbestos, Defendants had no obligation to warn the Navy about these dangers.  Plaintiff has raised a genuine issue of material fact on this issue by citing to Defendants' expert reports to establish that the Navy was unaware of the dangers of asbestos until the late 1960s or early 1970s.  As there is a genuine issue of material fact as to whether the Navy or Defendants had superior knowledge about the dangers of asbestos, Defendants are not entitled to summary judgment as to the third element of the Boyle test.

26

C.    Defendants' Burden of Showing the Absence of a Genuine
      Issue of Material Fact as to Whether They Are Entitled
      to the Government Contractor Defense

The Court emphasizes that, in order to prevail on summary judgment as to the government contractor defense, Defendants would have to show the absence of a genuine issue of material fact as to all three (3) prongs of the Boyle test. Defendants cite to this Court's decision in Faddish v. General Electric Co., No. 09-70626, 2010 WL 4146108 at *8-9 (E.D. Pa. Oct. 20, 2010) (Robreno, J.), where this Court found that defendant was entitled to summary judgment based on the government contractor defense. Faddish is distinguishable in that there the plaintiffs did not produce any evidence of their own which contradicted defendants' proofs. Here, by contrast, Plaintiff has produced affidavits and deposition testimony to controvert the evidence presented by Defendants. As the situation presented in Faddish is not present in the instant case, Defendants' Motions for Summary Judgment will be denied as to the government contractor defense.

## V.   CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment will be denied. An appropriate order will follow.

27